Case number 18-5347 Howard Bloomgarden, Appellant v. National Archives and Records Administration Mr. Lewis for the Appellant, Mr. Kudak for the Accolade May it please the Court, my name is Torrence Lewis. I'm here on behalf of the Appellant Howard Bloomgarden. Mr. Bloomgarden is asking this Court to reverse, remand with instructions to grant his motion for summary judgment, and order the National Archives and Records Administration to release the final termination letter of former Assistant United States Attorney Raymond Granger. And I'm going to begin with Bloomgarden 1, what I'll refer to as this case. I'm not going to go in on an empty slate here. But I did want to make three preliminary points. First is, since it seems to be on the fresh in everyone's mind, this is de novo review. Number two, unlike a lot of the cases that both the government and the district court relied on, this case involves Exemption 6 up to the FOIA, where the presumption of favor of disclosure is as strong as anywhere that can be found in the Act. This Court in contrast with 7C, Exemption 6 requires a balance tilted emphatically in favor of disclosure. And the third preliminary point I'd just like to make is a broad one. And I think it's this, that the FOIA calculus is not static. So a lot of the cases we're looking at here, they predate the sort of unprecedented expansion of federal criminal law. I think that at this point in time, the public interest in prosecutors, it's just, it's different in this day and age. And I think FOIA should account for that temporal distinction in terms of the public interest. Why is that? Excuse me? For low-level prosecutors like him? Like Granger? I think any prosecutor, Your Honor. I don't, again, the distinction between a high-ranking and a low-ranking has been discussed. I don't think it was ever dispositive in terms of the balancing. Certainly, you could account for it in the public interest might be slightly lessened. The privacy interest might be a little greater because of the less responsibility. But I think the unique function of the prosecutor, federal prosecutor, in today's environment is of such importance that drawing these distinctions is less critical. Finally, and I'm going to now go to the Bloom Garden 1, which is where we sought a proposed disciplinary letter, which was supported by thousands of pages of documentary evidence. And this court held that the balance in that case shifted, was greater on the privacy side, and so they affirmed the district court. Unlike Bloom Garden 1, this is a final termination. And that was a critical point in this court's prior opinion. The court said what concerns us the most was the fact that this was a draft and it was untested and it was not endorsed by the Deputy Attorney General's Office. We have what the court envisioned there, here, which is a final action of an agency terminating a prosecutor, which is, frankly, an incredibly rare event, I think. I've never seen a case. So it's true that in Bloom Garden 1, we emphasized that there were allegations and they were untested. And I appreciate that that is your principal ground for distinguishing it, but we also said approving of what the district judge's characterization, it's a single staff-level attorney and there is little public interest in a single, largely unremarkable disciplinary matter regarding a former AUSA who left government service two decades ago. And that, it would seem, is equally apposite today. And I just, what's your best case that there's a public interest in knowing what's in this disciplinary letter? Well, first of all, I think we have to, again, it's critical, the distinction, right? Because if we're looking at all these prior cases from the court, almost all of them involved inchoate sort of determinations. They weren't final determinations. So I understand you're moving past that. But I do think that in terms of distinguishing the cases that are out there, we're talking Stern, Carter, Kimberlin, the cases relied on by the district court and by the government on appeal. Those cases, they were all so Stern, you've got, their involvement was inadvertent. They weren't directly responsible. Again, that's 7C. Carter was exception six, but the misconduct charges in that case were dismissed. Here we actually have a final termination. So, again, I just think they're factual distinctions. I think the other issue... What's your distinction in Kimberlin, from Kimberlin? I'm sorry. Well, Kimberlin is 7C. Right. The discipline was short of misconduct. A bigger deal nationally. Again, 7C. So, but yes, there was some national interest in that. But it was, again, untested. And I think that's, you know, I keep coming back to that. But let me go into the public interest in this specific attorney. Because I think, again... As you do, I want to follow up on some of what Judge Pillard, I think, was asking. We have made a determination in the first case with respect to the weighing of the public and private interest. And I don't know how... I mean, I went back and looked at it again this morning. It is very strongly against you. Yeah. Very strongly. I can't ignore that in the next case. Same parties, same issue. And it is very clear. It is not just the first point you raised, which was the right one to raise. It's a very strong determination by that first panel as to how you, in this case, how you weigh the public-private interest. And you came out on a very... Your client came out on a very short end of that. I agree, obviously. And I'm not here to sort of re-argue that case. But I do think it's a different case for the reason I've already stated, which is we have final agency action. And that, I think, increases the public interest. But we also have two other items that I want to refer to. The first is that the government, in this further litigation, has made no effort, at any stage, to redact or to seek any privacy protection for this AUSA, Raymond Granger. So... And they've also discussed, you know, the terms of what's gone on. So it's... In a sense, the cat's out of the bag. I don't know what additional... What do you mean when you say they've discussed the terms of what's gone on? That it was a termination. This prosecutor was ultimately fired, number one. Number two, it was misfeasance over a long period of time. And... The government, has the government admitted to that? I thought that was a characterization... No, I'm talking about the court, I'm sorry. So you've got the court, but you have no... Appellant argues that. Right. It was misfeasance over a relatively long period of time. Well, I think that... I mean, there was a recognition in Bloom Garden 1, and... I'm just saying that that was reciting the appellant's arguments. Right. On page 759 to 760. So... Appellant argues... I guess what I'm talking about is the connection now. Excuse me. Between the fact that they've made no effort to redact this information in the record. So that, again, I think that to a large extent, it's in the public arena, and I think the court could take judicial notice of that. One other item, and this is brought up in my 28-J letter, and it's also in the... Sorry. The opening brief at page 19, note 5. Raymond Granger is now joined as a signatory to public letters. First, opposing the president's travel ban. The second, asking for the attorney general of the United States to resign. In both of those instances now, he's placed himself and his employment into the public record, affirmatively, deliberately. And I think, at a minimum, the public has a further interest, and this is a distinction from Bloom Garden 1, in judging his tenure, judging his credibility, if he's going to pull himself out to the public in that way. I see my time is up. Thank you. Thank you very much. Thank you. Good morning. May it please the court, Brian Hudak from the U.S. Attorney's Office on behalf of the National Archives and Records Administration. In a prior case brought by Bloom Garden, a panel of this court decided that a proposal to remove a former AUSA who was assigned briefly to prosecute Bloom Garden was exempt under FOIA Exemption 6. Specifically in Bloom Garden 1, the court held that the former AUSA's substantial privacy interest in this case outweighs the rather modest public interest in the proposal to remove, such that the release of the proposal to remove would represent a clearly unwarranted invasion of personal privacy. And what about that privacy interest? I mean, it's... Bloom Garden 1 seems to actually have drawn a mistaken conclusion from the record that, saying it would appear that the assistance request was for resignation rather than termination, but we can't be certain. And then two pages later, it appears there was some sort of settlement leading to the assistance resignation. We can't determine how many of the allegations were endorsed. And now we have the answer. No. So this is actually an inaccurate depiction of what happened. It's now publicly known, I guess, from the California case and other sources that he was fired. What is his privacy interest in this case? I think it's the same that it was at President Kimberlin. There, the AUSA suffered or suffered was disciplined for leaking information to the press regarding an investigation of the Vice President. And that, he made public comments to a media outlet regarding his sanction. And yet, the court still held in Kimberlin that he still has a privacy interest, however, in avoiding disclosure of the details of the investigation and of his misconduct. So it's not just the fact that he was terminated. He's continuing to be a practicing attorney in New York and disclosing the details of what this court has described as garden variety transgressions is not something that I think that he would be pleased to see. In fact, I think this court noted in Book of Garden 1 that he would be quite embarrassed by this disclosure as one of the reasons why he has a privacy interest in his disciplinary file from over two decades ago. Although, as opposing counsel said, in Kimberlin, there was no final conclusion, I think he said. Discipline was short of misconduct. There was no intentional misstatement there. I mean, the AUSA basically thought, like, people are raking Dan Quill over the coals. I just think people should know what the facts are, that they don't support these vicious rumors. And it was a misjudgment. But it doesn't draw the question in the same way that Mr. Granger's lying to judges, lying to his supervisor, unauthorized signing off on things, as if he were his supervisor. I mean, this is a very different picture one gets of internal supervisory checks and the evasion thereof. So arguably more in the public interest to know. And yes, it involves a line-level attorney, but it also involves a lot of people in the supervisory chain allowing this to go on for years. It's actually a fascinating... I mean, I wouldn't say... I mean, without kind of putting the actual record and the details of the record that is being withheld into this court's record, I would say that the prior characterizations of not only this court, but the district court on two different occasions that has reviewed the allegations and the findings that led to the sanctions have all described them as garden variety, unremarkable, things that a junior attorney might commonly do through inexperience or misjudgment. These aren't the type of things that affect the integrity of any judicial process that has been identified. I take that distinction. The clear point is this is not a situation where Brady material or Duglow material was withheld. This is not a situation where... Obviously, given the particular requester here, this is not a situation where the district judge believed there was going to be any effect on this requester's case and ability to seek relief. Absolutely, I accept that that's the case, but then when you look at cases like Stern, there, all that was being withheld was the individual's names. The actual disciplinary records were out, even as the low-level agents. Then they said the agent in charge name was associated also. It's just hard to find a case that feels convincingly like this one in terms of both the public interest and the privacy interest. On that last point, I would say Bloom Garden 1 is a good example of one that's nearly on all fours, especially with the second letter. The second letter is not the final decision. It is a response letter asking for information regarding the termination. I think Bloom Garden 1 is pretty much on all fours with regard to what we've characterized as the response letter. For the termination letter, the only difference is that it's the final decision versus the allegations. That's a big difference. As we characterize in Bloom Garden 1, the main area of concern for us was you don't put allegations out there that have never been resolved. It's just not fair. I agree, Your Honor. That made that case even more kind of a slam dunk, if you will, in our minds. Again, I think turning back to Bloom Garden 1's text, the court in discussing the privacy interest of the former AUSA didn't lead with the allegations. It led with the fact that we think the privacy interest is quite substantial. We think so not just because the assistant is now a practicing lawyer who would undoubtedly be quite embarrassed by disclosure of a proposed discipline letter from many years ago. That's the first privacy and paramount privacy interest that the court identified in Bloom Garden 1. We think that it still holds here today. How is it that the AUSA's name got out into the public arena? Because otherwise it would be open to us to do what was done in Stern, which is keep the name withheld. These cases are on two sides of the coin. If someone asks for the disciplinary files of the U.S. Attorney's Office for the District of Columbia without asking for Brian Hudak's personal disciplinary file, then there is a possibility of redacting the information so you don't know what discipline was assigned to which AUSA. The FOIA request in this case that was specific to the former AUSA, so give me Brian Hudak's disciplinary file. So at that point in time, you can't unring that bell, right? It depends on what the request is and how Exemption 6 plays into the request. If the request itself is asking for the person's identifiable information, then there's no redaction possible in giving the letter, saying this is the responsive letter to your request. At Stern, it was widely publicized what the misconduct was of the FBI field office in New York and what they, that conduct was publicized and was released and the only portions that were redacted were the low-level employees in that case. And, you know, just going through the different factors that this Court has reviewed in the past, the rank of the employee is a staff-level, low-ranking employee of the Department of Justice. The seriousness of the misconduct, again, Bloom Garden 1 addressed this, it wasn't, it was garden variety, didn't affect the integrity of the judicial process. Status as a former AUSA is not a government employee, so revealing information wouldn't necessarily be revealing what the government wanted. In his recent forays into the public debate on some issues, has he identified himself as a former AUSA? I think him along with, I don't know if it's hundreds or thousands, I haven't reviewed the petitions myself, I clicked on the link, but the signature list kind of scrolls off the bottom, so I don't know exactly how many people. It's my understanding that he did sign those two petitions that the appellant has identified, but I think that that factor isn't any more telling. I mean, Kimberlin, the AUSA talked about the very misconduct that led to his termination, and the Court held that still, revealing the details of the misconduct, the investigation, exactly what was alleged, he still had a substantial privacy interest in, so I don't believe that signing a petition along with thousands of other former employees of the Department of Justice, where that's the only thing that's being identified, really shifts the balance at all, Your Honor. Other factors, recency, again, from two decades ago, importance to government functions, they don't reveal a systematic failure like the Court discussed in Barco, where it did authorize  information regarding a supervisory official at a U.S. Attorney's office. The status of the individual, he's still a practicing attorney, so we believe that the factors the Court has identified in prior cases all tilt in favor of nondisclosure in this case, and we ask that the judgment of the District Court be affirmed. Thank you. Did Mr. Lewis have any more time? Okay, you can take a minute. Thank you. I'd just like to say a couple things. You can take a minute. What's that? A minute. A minute, yes. There's this constant refrain here of garden variety misconduct, negligence, etc., and it's hard for me to reconcile that with the fact that this person was removed from service in the government. And I think the public has a separate interest in that as well. The agency action here, they terminated somebody, but it's garden, I mean, so that it always has rung hollow to me because I think a prosecutor, if they're willing to disavow, I mean, I think that the public knows that's probably indicative of other misfeasance, and so there's an interest in reconciling those two items. The second thing is... The District Court looked at this in camera, right? What's that? The District Court looked at this in camera. The District Court did look at it in camera. And one other point just on this question of the name being out in the public domain now, the government could have redacted, they could have asked for redaction at the very beginning, just like Mr. Bloomgarden did to protect sensitive information. Thank you, Your Honors. Thank you. Case is submitted.
judges: Tatel, Pillard, Edwards